HUSCHER v. NEW YORK & QUEENS ELECTRIC LIGHT & POWER CO.

(Supreme Court, Trial Term, Queens County.   January 21, 1913.)

1. ELECTRICITY (§ 19*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

Where a street lamp, from contact with which plaintiff's intestate received an electric shock causing his death, was suspended in the usual and ordinary way, so that it could be lowered for the purpose of trimming, and was intended to be and at frequent intervals was so lowered, and the evidence showed that there was no defect in the light or apparatus by which it was raised or lowered, in so far as the raising or lowering, or security of it when raised, were in question, the mere fact that the lamp in some way had been lowered from its normal position until it hung about four feet above the street was not evidence of negligence, or that the lamp fell by reason of some defect in the apparatus which held it in place.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

2. ELECTRICITY (§ 16*)—DEFECTS—CONSTRUCTIVE NOTICE.

Where a street lamp had been lowered from its normal position only about an hour and a half, and the fact was in no way indicated at the power house, the finding that the electric light company had constructive notice was contrary to the evidence.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

3. ELECTRICITY (§ 19*)—FINDINGS—INCONSISTENT FINDINGS.

In an action for death from an electric shock, caused by contact with a street lamp which had in some way become lowered from its normal position, the jury's answer to special interrogatories that they did not know whether the electric light company exercised reasonable care in erecting its lamps, poles, and apparatus thereon, or in maintaining them, was inconsistent with a special finding that the lamp fell because of a defect in the apparatus holding it in place, and with a general verdict for plaintiff.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

4. TRIAL (§ 352*)—SPECIAL INTERROGATORIES—FORM.

While special interrogatories as to whether an electric light company exercised reasonable care in the erection of its lamps, poles, and apparatus, and in maintaining them, were objectionable because plural in their character, their submission did not prejudice plaintiff, since, if there was negligence in the maintenance of any lamp or pole, the jury should have so answered the questions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840-842, 844, 845; Dec. Dig. § 352.*]

Action by Florence Huscher, as administratrix, against the New York & Queens Electric Light & Power Company.   On motion to set aside a verdict for plaintiff.   Motion granted.

Frank F. Davis, of New York City, for plaintiff.
Rasquin & Rasquin, of New York City, for defendant.

JAYCOX, J.   The plaintiff's intestate came to his death by reason of an electric shock received while crossing a street in Jamaica, Queens county, N. Y.   He was walking with an umbrella over his head, and the point of this umbrella came in contact with a lamp of the defend-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ant, which by some means had been lowered from its normal position some 10 or 12 feet above the street, until it hung at a point above the street where such lamps are "trimmed" or the carbon points renewed; it being then about 4 feet above the street. These are the facts as claimed by the plaintiff.

The defendant disputed to some extent the cause of decedent's death, but the evidence was sufficient to warrant the finding made by the jury.

In addition to taking the general verdict, the court submitted to the jury certain specific questions to be answered by it, and which were answered, as hereinafter stated. The general verdict was in favor of the plaintiff. The questions and the answers are as follows:

"First Question: Was the falling of the lamp of itself evidence of negligence? Answer: Yes.

"Second Question: Was there a sufficient lapse of time the evidence shows the lamp was down to the time the accident happened to indicate that the defendant had notice of the lamp being down, or with reasonable diligence could have obtained knowledge of that fact? Answer: Yes.

"Third Question: Did the lamp fall by reason of any defect in the apparatus which held it in place? Answer: Yes.

"Fourth Question: Did the defendant exercise reasonable care in the erection of its lamps and poles and the apparatus thereon? Answer: We do not know.

"Fifth Question: Did the defendant exercise reasonable care in maintaining said lamps, poles, and other apparatus thereon? Answer: We do not know."

The first question was submitted because the court was in grave doubt as to whether the happening of this particular accident was evidence of negligence or not.

[1] No case of exactly similar nature has been called to the court's attention, and some considerable examination by the court has failed to discover one. All of the cases to which attention has been called are cases where a wire or some appliance intended to be stationary has fallen to the street; but no case has been cited where the appliance which caused the injury was movable, and in the course of the regular and ordinary operation of it was raised and lowered as this arc lamp concededly was.

The evidence showed that the lamp was suspended in the usual and ordinary way from an arm projecting into the street; that it was raised to its normal position by means of a rope running through a pulley; that when it was drawn up to its normal position a ring or other projection upon this rope slipped into a slot and held the lamp thus suspended. The other end of the rope was then attached to a ring in the pole, but the weight of the lamp was not carried upon this rope; it was entirely suspended by means of the ring or projection in the slot, as above mentioned. It could only be lowered, as it was lowered for the purpose of trimming, by pulling upon the end of the rope fastened to the pole until the lamp was raised some six or eight inches above the slot, when the rope and ring slipped into another groove of larger dimensions, which permitted it to be lowered to the street. To do this a rope was attached to the end of the rope fastened to the pole, and that end allowed to go up until it came in contact with the pulley.

These lamps were thus raised and lowered every time they were trimmed, and every time they needed attention for any other reason.

There is still serious doubt in my mind, in spite of the finding of the jury, as to whether or not this constituted sufficient proof of negligence merely to show that this lamp was down in the position above described. If it had been some stationary part of the defendant's apparatus, which could only be lowered by reason of some defect or break in it, I think an entirely different situation would be presented. But this could be lowered by any person endeavoring to do so, without there being any defect whatever in the apparatus which raised and lowered it and held it in position. The case which, to my mind, comes most nearly to being analogous to this is the case of Jones v. Union Railway Co., 50 Misc. Rep. 651, 98 N. Y. Supp. 757. There a piece of wire was found dangling from the feed wire of the defendant company; but the wire was a different kind of wire from that used by the defendant company. There was no evidence as to how long it had been in that position, and the court held that there was, under these circumstances, no evidence of negligence to submit to the jury; that the circumstances pointed irresistibly to the conclusion that some mischievous person had thrown the loose piece of wire over defendant's wire.

The evidence in the present case showed beyond question that there was no defect in the lamp or apparatus by which it was raised or lowered, in so far as the raising or lowering, or security of it when raised, were in question. The very lamp itself was brought into court and exhibited to the jury, and, so far as I was able to understand, no claim was made that it was in any way defective. This, I think, clearly indicates that the answer to the third question was contrary to the weight of evidence. I am unable to discover in the evidence any proof upon which such a finding could be based, unless it is based upon the contention that the method in vogue by which these lamps were raised and lowered and held in position is, in and of itself, defective and dangerous. Unless the court is prepared to hold that this method of suspending lamps is a dangerous and improper one, I can see no basis either for the jury's finding that the happening of the accident itself was evidence of negligence, or that the lamp fell by reason of some defect in the apparatus which held it in place.

And there is not any conclusion of the court that the manner of suspending these lamps was dangerous and improper negatived by the jury's answer to the fourth question, in effect, that it was unable to find any negligence in the erection of the lamps and poles.

[2] As to the second question, I think the finding of the jury is clearly erroneous. The most liberal view of the evidence would only show that the lamp was down from an hour to an hour and a half. I do not think that reasonable care required an inspection so frequent as to discover a defect existing only that length of time. If the lamp had been in contact with the ground, or the accident had been of such a character as to cause any disturbance at the power house, a different situation would be presented, and a different rule would necessarily be applicable; but the accident here described was in no way indicated at the power house.

**[3, 4]** The answers to the fourth and fifth questions submitted are inconsistent with the answer to the third question, and inconsistent with the general verdict. If the jury was unable to find that negligence existed either in the erection, care, and maintenance of the lamps and poles of the defendant, its verdict should have been in favor of the defendant. Without finding the defendant guilty of any negligence, the jury has found a verdict against it. This verdict, I think, should not be permitted to stand. The plaintiff's attorney urges that the fourth and fifth questions, by relating to lamps and poles, instead of the lamp and pole in question, are ineffectual to have any bearing upon the general verdict. I do not agree with this contention. The defendant might well have objected to the questions being plural in their character, but certainly the plaintiff did not suffer thereby. If there was negligence in the maintenance of any lamp and pole, then the answer would be in the affirmative. As the jury was unable to determine whether any negligence existed or not, the verdict ought to have been in favor of the defendant.

Motion to set aside verdict granted.